**No. 61347.**—Hamilton Murray Hutchinson, DBA and Hutchinson Brokers et al. *v.* United States, protests 248116–K, etc. (San Diego).

WILSON, Judge: The merchandise in the cases at bar consists of certain carpets made up of strips of old wool rugs and carpets, imported from Mexico, which were classified under paragraph 1116 (b) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, at the rate of 30 per centum ad valorem as carpets and rugs, chenille Axminster type. Plaintiffs contend that the importations in question are properly classifiable under paragraph 1117 (c) of the said act, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, supplemented by Presidential proclamation, T. D. 51954, at the rate of 15 per centum ad valorem as "Floor coverings, including mats and druggets, wholly or in chief value of wool, not specially provided for," valued at not more than 40 cents per square foot.

The pertinent provisions of the competing paragraphs are as follows:

Paragraph 1117 (c):

Floor coverings, including mats and druggets, wholly or in chief value of wool, not specially provided for:

\*          \*          \*          \*          \*          \*          \*

    Other:

        Valued at not more than 40 cents per square foot_____ 15% ad val.

Paragraph 1116 (b):

Carpets, rugs, and mats, of oriental weave or weaves \* \* \* chenille Axminster carpets, rugs, and mats; all the foregoing, plain or figured, whether woven as separate carpets, rugs, or mats, or in rolls of any width_____ 30% ad val.

It appears that the sizes of the rugs or carpets under consideration ranged from small throw rugs to large carpets, from about 12 or 13 feet wide by 15, 18, or 20 feet long (R. 4). Three samples of carpeting were introduced in evidence. Plaintiffs' exhibit 1 is a square of carpeting produced in the Los Angeles factory of the purchaser, but stated by plaintiffs' witness to be representative of all the importations at bar (R. 6). Plaintiffs' exhibit 2 is a square of the carpeting in an unfinished condition, which was manufactured in the country of exportation. With respect to the latter exhibit, there is testimony in the record that it was manufactured in the same manner and in all respects as plaintiffs' exhibit 1 (R. 19). Plaintiffs' exhibit 3 is a sample of a chenille Axminster carpet (R. 23). From each of these exhibits, a strip of carpeting was detached and received in evidence as plaintiffs' exhibit 1–A (R. 15), exhibit 2–A (R. 20), and illustrative exhibit 3–A (R. 24), respectively.

The only witness called was Mr. Leon Sempliner, Los Angeles, Calif., president of Western Carpet Co., the importer of the rugs in question, domestic manufacturer of carpets, such as those herei nvolved, and retailer of a general line of carpets,

who testified on behalf of the plaintiffs. It appears that this witness had supplied the equipment on consignment to the Mexican factory which produced the rugs in question and was the purchaser of the involved rugs. He stated that he had been in the rug business for approximately 30 years, 15 of which were spent with his present concern. Mr. Sempliner further testified that he was familiar with the production and manufacture of chenille Axminster rugs or carpets, having sold and seen them manufactured in the mills in the eastern part of the United States (R. 14). He described the manufacture of the involved rugs substantially as follows: The material from which the instant rugs are made up consists of old wool carpets, which are cut into narrow strips, which were described by plaintiffs' witness as the "fillers" for the warp threads. There is no back to this material (R. 17). The strip of material is then taken to a wheel and twisted in the condition as represented by plaintiffs' exhibits 1–A and 2–A (R. 17, R. 30), so that the "pile" is raised around the circumference of the strip. The material is then taken to a two-harness loom, i. e., having two sets of warp thread. Thereafter, the strips are merely bound together with the warp threads, which run horizontally and which are attached to the base of the binding (R. 31). The finished product is then a reversible floor covering, having, when completed, a pile surface on both sides of the rug. Mr. Sempliner further testified that he was familiar with the type of rug represented by plaintiffs' exhibit 3, having seen it manufactured and having sold it as a dealer for many years, and stated that the rug represented by said exhibit was a "Chenille Axminster" (R. 22). He stated that this type of rug was not manufactured in the same manner as rugs, such as plaintiffs' exhibits 1 and 2; that the latter rugs do not have any backing material, such as appears in plaintiffs' exhibit 3; that the plaintiffs' exhibits 1 and 2 are reversible rugs and can be used on both sides, whereas plaintiffs' exhibit 3 is not a reversible rug (R. 23).

The uncontroverted testimony in the case at bar establishes that chenille Axminster rugs are those in which the chenille fur is woven as a separate blanket, which is then cut into chenille fur strips which are subsequently processed so that the pile is raised in a vertical position, i. e., the weft threads are folded to form a "V" with the blanket warp at the apex. The fur is thereafter attached to a foundation fabric or backing. The process thus described for chenille Axminster carpets or rugs is similarly outlined in the Summary of Tariff Information, 1929, schedules 8–15, at page 1731, as follows:

Chenille Axminsters are mainly high-priced articles and their manufacture, although on a power loom, closely approaches the handicraft method of production. The preparation of the chenille, or "fur" as it is known in the trade, necessitates the preliminary weaving of a special cloth, composed of cotton warp and wool filling, which is cut in strips and folded to make a tufted yarn. The loom has to be stopped while the fur is being aligned in position; it is then started up to throw in binding picks, and again stopped to align another row of fur. The loom therefore is operated only intermittently and considerable handwork is involved. The warp binder threads are of cotton; the stuffer or backing threads used in the warp are of jute; for weft threads which do not appear on the surface there may be used jute or coarse woolen yarns (the latter often containing a large percentage of hair).

The Summaries of Tariff Information, 1948 edition, volume 11, part 2, at page 119, similarly describes the manufacture of chenille Axminster carpets and rugs as follows:

This summary is limited to chenille Axminster carpets and rugs, the most expensive type of machine-made floor covering other than the knotted pile. The chenille "fur" which constitutes the pile is the product of a leno weaving process prior to the weaving of the rug itself. On this first operation the warp yarns, which are usually of cotton, are reeded on the loom in sets of five with intervening spaces, and coarse woolen filling yarns are interwoven therewith in color sequences according to pattern. The resulting cloth is split by revolving

steel knives into longitudinal strips consisting of a set of cotton warp threads from which the cut wool filling projects on either side. These strips are passed over a steam-heated cylinder whose grooved surface gives a permanent V-shape to the cut woolen yarns which are to constitute the pile. The chenille fur is then wound onto cops, which are handed to the rug weaver in proper order according to the pattern. On the second weaving operation a strip of fur is alined on the warp while the loom is standing, the weaver using a steel comb to make the pile point upward; the loom is then started and a number of binding picks are woven in and the loom again stopped to aline another row of fur. This method of manufacture involves considerable handwork, and the intermittent operation of the loom gives a very slow rate of production with resultant high cost.

It thus appears from the record and authoritative sources, as well as from an examination of the carpets or rugs in issue, that the method of manufacturing the involved merchandise is substantially different from that which obtains in the production of chenille Axminster rugs or carpets. In the "MEMORANDUM TO ACCOMPANY INVOICE," found with the official papers, wherein the classification of the merchandise was reviewed, the following statement covering the carpets in question appears:

The sample was submitted to the trade by New York and technical data obtained. It was determined that the method of weaving and the type of construction is the controlling factor in the classification of the merchandise involved.

It further appears from the record and the samples submitted that, unlike the imported merchandise, the chenille Axminster carpet or rug by the very nature of its construction is not a reversible rug, whereas the carpets in issue are reversible and are so constructed with that evident design, inasmuch as they are not manufactured with a foundation fabric or backing.

Based on the record here presented, we are of opinion and so hold that the involved carpets are not embraced within the tariff meaning of chenille Axminster rugs or carpets. It appearing that the carpets under consideration are used as floor coverings and that there is no other specific designation applicable to the involved articles, the merchandise in question is properly classifiable under paragraph 1117 (c) of the Tariff Act of 1930, as modified, *supra*, at the rate of 15 per centum ad valorem, as "other floor coverings," not specially provided for, as claimed. The protests in this case are sustained. Judgment will be rendered accordingly.